# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

**In Re:**

**Stephanie Cluff,**

**Debtor.**

**Bankruptcy Case
No. 09-41244-JDP**

## MEMORANDUM OF DECISION

**Appearances:**

Craig R. Jorgensen, Pocatello, Idaho, Attorney for Debtor.

Kathleen A. McCallister, Chapter 13 Trustee.

### Introduction

Chapter 13[1] trustee Kathleen McCallister ("Trustee") filed a motion

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

MEMORANDUM OF DECISION - 1

to modify debtor Stephanie Osborne's[2] ("Debtor") confirmed chapter 13 plan because Debtor's marital status, income, and expenses had changed. Debtor asserts that, even if there have been changes in her overall financial and other circumstances, there has been essentially no resulting change between the amount of her current plan payment amount and her latest Schedule I and J monthly net income. Therefore, Debtor opposes any modification to her plan terms.

A hearing on Trustee's motion was held February 7, 2012, after which the Court took the motion under advisement. Having considered the evidence, testimony, parties' submissions, and applicable law, this Memorandum sets forth the Court's findings of fact and conclusions of law. Rule 7052, 9014.

### Facts[3]

When Debtor filed her chapter 13 petition on August 18, 2009, she

---

[2] When she filed her chapter 13 petition, Debtor's name was Stephanie Cluff.

[3] Unless otherwise noted, these undisputed facts are derived from the testimony at the hearing and the parties' briefs.

MEMORANDUM OF DECISION - 2

was a single mother of triplet sixteen-year-old daughters ("Debtor's triplets"). Dkt. No. 1. According to her original Schedule I, Debtor worked as a mortgage loan officer earning average monthly income of $ 4,454.16. *Id.* After deducting her living expenses, Debtor's original Schedule J monthly net income of was $829.16. *Id.*

After nine months, and multiple attempts, Debtor was finally successful in obtaining confirmation of her fifth amended plan on May 11, 2010 (the "Plan").[4] Dkt. No. 67. The Plan, as amended by the Plan's Confirmation Order, required Debtor to make 36 monthly payments. Debtor was required to pay $675 to Trustee for four months, after which the monthly payments were to reduce to $150 until March 2012, at which time the Plan payments were to increase to $442 per month[5] for the Plan's

---

[4] The confirmation hearing at which the Court granted confirmation of Debtor's Plan was May 11, 2010; the Confirmation Order was not docketed until May 28, 2010.

[5] The March 2012 increase was tied to Debtor's anticipated completion of payments on a post-petition, $6,000 auto loan which was proposed in January 2010, but not approved by the Court until May 11, 2010. *See* Dkt Nos. 41, 67. The lender, however, was Patrick Osborne ("Osborne"), Dkt. No. 41, who became
(continued...)

MEMORANDUM OF DECISION - 3

duration.[6]  Dkt. Nos. 60, 69.

Debtor updated her Schedules I and J when she filed her proposed fifth amended plan, on March 18, 2010.  Dkt. No. 59.  At that time, she continued to work as a mortgage loan officer, but for a new employer, and her Schedule I average monthly income had now declined to $3,583.[7]  *Id.*  After deducting expenses, Debtor's March 18, 2010, monthly Schedule J net income was $151.81.  *Id.*

Debtor's Schedule I also indicated she did not anticipate any change in income within a year of March 18, 2010.  *Id.*  However, within weeks of filing that schedule, there were significant changes in Debtor's life.  On

---

[5](...continued)
Debtor's husband prior to the loan's approval.  It is unclear from the record whether Osborne required Debtor to repay the loan, and, thus, whether the monthly payment reduction to $150 was necessary.

[6] For unknown reasons, Trustee did not mention the scheduled March 2012 increase in Plan payments at the hearing on the motion to modify.  Instead, Trustee repeatedly argued how fundamentally unfair it was for Debtor to only pay $150 a month.

[7] While Debtor's gross monthly income was only $475.06 less per month than her pre-petition income, her new payroll deductions were over four times greater.  Thus, Debtor earned $475.06 less per month in May 2010, and had increased monthly payroll deductions of $396.10.

MEMORANDUM OF DECISION - 4

April 17, 2010, Debtor and Patrick Osborne ("Osborne") were married.[8] Osborne had four minor children ("Osborne's children"), and, with Debtor's triplets, Debtor's household grew from four to nine individuals within weeks of her scheduled Plan confirmation hearing. Thus, when Debtor filed her amended Plan and schedules on March 18, the documents were accurate, but, when the Plan was confirmed on May 11, 2010, the Plan and schedules certainly did not reflect Debtor's new familial and financial situation.

Debtor did not personally appear at her confirmation hearing, and did not inform the Court, Trustee, or even her own attorney about her changed marital status and financial circumstances prior to Plan confirmation.[9] For a year-and-a-half after confirmation, until October 31,

---

[8] Debtor testified she and Osborne became engaged "about a week before we went and got married."

[9] Apparently, Debtor was not actively involved with her attorney in the confirmation process. Indeed, when questioned at the February 7, 2012, hearing, Debtor, while accurately reciting her petition date from memory, did not know when her Plan was confirmed. When asked whether confirmation occurred before or after her marriage to Osborne, Debtor's reply was, simply, "I don't
(continued...)

MEMORANDUM OF DECISION - 5

2011, the only potential indication there had been a change in Debtor's marital status, or her financial circumstances, was a May 13, 2010, Notice of Change of Address,[10] Dkt. No. 68, and Debtor's 2010 tax return, a copy of which she submitted to Trustee on June 1, 2011, along with a letter announcing her April 2010 marriage, Ex. 202.

In the meantime, both Debtor and Osborne were employed until September 2011. Debtor's income declined during that period due to difficulties in the mortgage industry;[11] at the same time, Osborne maintained steady employment. Ex. 202.

In September 2011, Debtor and Osborne decided that, given Debtor's declining earnings and other family considerations, she would no longer work. Debtor's October 31, 2011, amended Schedules I and J thus reflect

---

[9](...continued)
know."

[10] While this notice advised the Court and Trustee of a change in Debtor's address "effective May 13, 2010," it did not indicate she had married in April. Rather, it still indicated Debtor's name as Stephanie Cluff.

[11] Debtor's 2010 W-2 forms indicate she earned gross wages of $14,504.59 in 2010. Ex. 202.

MEMORANDUM OF DECISION - 6

Osborne as the household's sole wage earner.  Dkt. No. 79.  Per the Schedule I, Debtor indicated Osborne's average monthly income was $5,489.09, with $3,489.09 being Osborne's net monthly take home pay.[12]  *Id.*  The remaining $2,000 per month in income, while attributed to Osborne on the Schedule I, was actually social security benefits paid to Osborne's children.[13]  *Id.*

Debtor's October 31 Schedule J indicates monthly expenses of $5,339. *Id.*  Among those expenses is $600 of monthly support provided to Debtor's triplets, who now all attend college and no longer live at home.[14]

When she learned of Debtor's changed marital status and financial

---

[12] While Osborne's take home pay was only $3,489.09 per month, his monthly gross wages were $7,918.46, the difference due to payroll and social security taxes of $1,375.91 per month and retirement savings of $2,805.38 per month.  Dkt. No. 79.

[13] Osborne's children receive death benefits as survivors of their birth-mother, Osborne's previous wife.  Schedule I only includes two columns, for income earned by a debtor and income earned by the debtor's spouse.  Here, under non-debtor-spouse-Osborne's income, where Schedule I asks for "[s]ocial security or government assistance," Debtor included $2,000 a month, identified as "[c]hildren[']s Social Security Income."  Dkt. No. 79.

[14] All of Debtor's triplets live away from home.  Two attend Idaho State University; the other attends Boise State University.

MEMORANDUM OF DECISION - 7

situation, Trustee moved to modify Debtor's Plan to increase her monthly payments. Dkt. No. 78. At the February 7, 2012, hearing, Trustee urged that Debtor's modified plan payments should be $750 per month.[15] Debtor argues that, in spite of any changes in her marital or financial situation, her monthly net income has not changed, and the modification proposed by Trustee is not appropriate.

## Discussion

**I.    Modification of a confirmed chapter 13 Plan under § 1329(a).**

The Code provides that the chapter 13 trustee may move to increase the amount of the payments in a debtor's confirmed plan at any time between confirmation and the completion of plan payments. § 1329(a)(1). The trustee bears the burden of showing facts to support a proposed modification. *See Max Recovery, Inc. v. Than (In re Than)*, 215 B.R. 430, 434 (9th Cir. BAP 1997).

A modified chapter 13 plan is viewed as a new plan, and must meet

---

[15] This amount is a significant decrease from the figure contained in Trustee's motion to modify, wherein she argued the monthly payment amount should increase by $6,879.

MEMORANDUM OF DECISION - 8

many of the same criteria as the originally confirmed plan.  *See* § 1329(b); *Profit v. Savage (In re Profit)*, 283 B.R. 567, 574 (9th Cir. BAP 2002) (citing *Powers v. Savage (In re Powers)*, 202 B.R. 618, 623 (9th Cir. BAP 1996)).  Per § 1329(b), the requirements applicable in a plan modification are those found in §§ 1322(a), 1322(b), 1323(c) and 1325(a).

Of particular relevance here is the requirement that the modified plan:

> provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan . . . .

§ 1322(a)(1).  At first glance, it appears Debtor's current Plan requires more than her anticipated future earnings, which is, frankly, $0.  Thus, it would seem, a plan modification requiring Debtor to pay even more is inappropriate.

Simply because Debtor is not earning income herself, however, does not mean she will have no future income.  *See* § 1322(a) (requiring consideration of not only a debtor's "future earnings," but also her "other

MEMORANDUM OF DECISION - 9

future income"); *Moen v. Hull (In re Hull)*, 251 B.R. 726, 732–33 (9th Cir. BAP 2000) (recognizing distinction between future earnings and other future income). "Other future income" includes a debtor's community property interest in her non-filing spouse's earnings.[16] *See In re Hull*, 251 B.R. at 732–33.

In Idaho, all property acquired after marriage by either a husband or wife, including income from wages or a salary, is community property. Idaho Code § 32-906(1); *In re Martell*, 349 B.R. 233, 236 (Bankr. D. Idaho 2005) (citing *Martsch v. Martsch*, 645 P.2d 882, 887 (Idaho 1982)). Both spouses, including the "non-earning" spouse, are entitled to management and control of that community property, and community property is available to satisfy a spouse's antenuptial debts. *See* Idaho Code § 32-912; *Bliss v. Bliss*, 898 P.2d 1081, 1084 (Idaho 1995) ("Parties often marry with

---

[16] Earnings, including a non-filing spouse's post-petition community property earnings, are also property of a chapter 13 debtor's bankruptcy estate. §§ 541(a)(2), 1306(a)(1). *But see In re Nahat*, 278 B.R. 108, 116–17 (Bankr. N.D. Tex. 2002) (excluding a non-filing spouse's post-petition community property earnings from a chapter 13 debtor's bankruptcy estate through §§ 541(a)(2) and 1306 because Texas state law designates an individual's personal earnings as "special community property," under the earner's exclusive control).

MEMORANDUM OF DECISION - 10

separate antenuptial debts, and those debts are payable from community property."). Absent bankruptcy, if a woman with debt marries, her pre-marital creditors may pursue her community property, including her new husband's earnings, to satisfy her pre-marital debts. *See Bliss*, 898 P.2d at 1084.

In effect, Trustee desires the same result for the creditors in Debtor's bankruptcy case. Debtor filed her bankruptcy petition as a single woman in August 2009, and later confirmed a chapter 13 Plan under which her creditors were limited to recovery from her separate property and earnings. Debtor is no longer single, however, and now has a marital community that includes her spouse's substantial earnings. Trustee essentially argues that Debtor's creditors are entitled to payment from Debtor's community property, and that her confirmed Plan should be modified to allow them to do so. Section 1322(a) requires all of Debtor's "other future income" to be devoted to her Plan, and, in Idaho, that income includes Debtor's interest in Osborne's community property earnings.

On these facts, the Court agrees with Trustee on this point.

MEMORANDUM OF DECISION - 11

Consideration of Osborne's earnings is appropriate in evaluating Trustee's proposed modification. Debtor's average monthly income, including her interest in Osborne's earnings,[17] is $3,489.09.[18]

## II. Debtor's payments to support her adult triplets in attending college are not appropriate for deductions as expenses.

Debtor's October 31 Schedule J includes a monthly $600 expense to support her eighteen-year-old college freshmen triplets. While there is some division among the courts, the majority do not allow a debtor to pay for a child's college expenses when unsecured creditors are not paid in full through a debtor's chapter 13 plan. *See In re Baker*, 400 B.R. 594, 598–99 (Bankr. N.D. Ohio 2009) (comparing the different approaches taken by the

---

[17] While Debtor has an interest in Osborne's community property earnings, and such earnings enter her bankruptcy estate, Osborne's retirement contributions do not enter her estate. *See* §§ 541(b)(7), 1306.

[18] While Debtor's October 31 Schedule I indicates an additional $2,000 per month in Osborne's children's social security death benefits, Debtor likely does not have a community property interest in those benefits, and they will not be considered as potentially available to Debtor's creditors. In Idaho, a wife does not have a community property interest in the social security benefits to be received by her husband. *See also Sherry v. Sherry*, 701 P.2d 265, 270 (Idaho Ct. App. 1985). It is therefore even more unlikely a spouse would have a community property interest in such benefits to be received by her spouse's children from another marriage.

MEMORANDUM OF DECISION - 12

courts). Those courts allowing a debtor to include an adult child's college expenses have only justified doing so where that child has "not yet 'left the nest.'" *Id.* (quoting *In re Gonzales*, 157 B.R. 604, 610–11 (Bankr. E.D. Mich. 1993)).

The Court concludes that Debtor's payments to support her adult children away at college are a discretionary expense, and the Court will not allow them to be deducted from Debtor's available income because her Plan does not pay her creditors in full. Put another way, Debtor's daughters have all found new nests.[19] While Debtor's desire to support her adult daughters' education is commendable, she may not do so at her creditors' expense. *See In re Walker*, 383 B.R. 830, 838 (Bankr. N.D. Ga. 2008) ("The Court is not implying that supporting college-age children is not admirable when parents have the means to do so. However, the Court agrees with its learned colleagues that supporting adult children at the expense of unsecured creditors is not permissible."); *In re Studdard*, 159 B.R.

---

[19] This is so even though two of those daughters presumably could "roost" with Debtor.

MEMORANDUM OF DECISION - 13

852, 856 (Bankr. E.D. Ark. 1993).

Debtor's allowable Schedule J monthly expenses thus amount to $4,739.[20] This amount exceeds the income available to Debtor by $1,249.91 per month.[21] Because Trustee has not shown that Debtor has enjoyed an increase in her net income available to make plan payments, Trustee has not carried her burden of proving that a modification of the Plan is justified.[22]

## Conclusion

---

[20] $5,339 - $600 = $4,739.

[21] The difference between negative $1,249.91 and Trustee's requested increase of $750 is the $2,000 in Osborne's children's social security death benefits. At first glance, those payments appear to be a "windfall" to Debtor because she benefits to the extent they are used to pay household expenses. At the same time, Debtor has no community property or other interest in the benefits, cannot use them at her discretion, nor could Debtor's creditors reasonably expect to reach them to satisfy their claims.

[22] Though Debtor has not sought one, it is unlikely the Court would find a modification to reduce Debtor's Plan payment is appropriate either. Debtor would be required to prove any proposed reduction was in good faith. *See* §§ 1325(a)(3), 1329(b). Such a showing may be difficult considering that Debtor (1) married shortly after proposing her Plan; and (2) failed to inform Trustee, or even her own attorney, about important changed circumstances in her financial circumstances for many months, instead operating under a one-income-based plan while she and Osborne had two incomes.

MEMORANDUM OF DECISION - 14

According to her confirmed Plan, beginning this month, Debtor is required to make Plan payments of $442 a month, an amount which is well beyond what her current Schedule I and J show she has available to pay her creditors. Trustee's motion to modify Debtor's Plan will be denied in a separate order.

Dated: March 16, 2012

_signature_

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 15