# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

In Re:

Stephanie Cluff

                **Debtor.**

**Bankruptcy Case
No. 09-41244-JDP**

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

    Craig Jorgensen, Pocatello, Idaho, Attorney for Debtor

    Kathleen McCallister, Boise, Idaho, Chapter 13 Trustee.

## Introduction

Chapter 13[1] trustee Kathleen McCallister ("Trustee") filed a motion

_____

    [1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

MEMORANDUM OF DECISION - 1

to dismiss debtor Stephanie Osborne's[2] ("Debtor") confirmed chapter 13

plan for cause pursuant to § 1307(c).  Debtor asserts that cause to dismiss

does not exist, and that, even if it did, dismissal would not be in the best

interests of her creditors or the bankruptcy estate.  A hearing on Trustee's

motion was held April 10, 2012, after which the Court took the motion

under advisement.  Having considered the evidence, the parties'

submissions, and applicable law, this Memorandum sets forth the Court's

findings of fact and conclusions of law.  Rule 7052, 9014.

## Facts[3]

Debtor filed her chapter 13 petition on August 18, 2009.  Dkt. No. 1.

After nine months, and multiple attempts, Debtor was finally successful in

obtaining confirmation of her fifth amended plan in May 2010 (the

---

[2]  When she filed her chapter 13 petition, Debtor's name was Stephanie
Cluff.  As discussed below, she has since married.

[3]  On March 15, 2012, the Court issued a Memorandum of Decision on a
motion to modify Debtor's plan filed by Trustee.  Dkt. No. 96.  These facts, unless
otherwise noted, are from the Court's March 15 decision, and from undisputed
representations of counsel offered at the hearing on this motion.

MEMORANDUM OF DECISION - 2

"Plan").[4]  The Plan, as amended by the Confirmation Order, provided that

Debtor would make 36 monthly payments to Trustee, Dkt. Nos. 60, 69,

with the initial four payments to be $675, followed by monthly payments

of $150 until March 2012, at which time the payments would increase to

$442 per month for the Plan's duration.  *Id.*

The payment amounts were based on in the income and expenses

detailed in Debtor's amended Schedules I and J submitted with the

proposed Plan, and on certain assumptions about Debtor's secured debts.

*See* Dkt. No. 59.  For example, the March 2012, payment increase was tied

to Debtor's anticipated completion of payments on a post-petition, secured

$6,000 auto loan.[5]  *See* Dkt No. 41.  In other words, the reason why Debtor

was only required to make payments of $150 per month, instead of $442

---

[4]  The confirmation hearing at which the Court granted confirmation of
Debtor's Plan was held on May 11, 2010.  Dkt. No. 67.  The Confirmation Order
was entered on May 28, 2010.  Dkt. No. 69.

[5]  The loan was proposed in January 2010; approval of the loan, however,
was delayed as the Court considered Debtor's various amended proposed plans.
The auto loan was finally approved on the same day Debtor's Plan was
confirmed, May 11, 2010.  *See* Dkt Nos. 41, 67.

MEMORANDUM OF DECISION - 3

per month, for the period between September 2010 and March 2012, was

because she was making payments on the auto loan.  The creditor on the

loan was Patrick Osborne ("Osborne").  Dkt. No. 41.  The Plan also

required Debtor to turn over any income tax refunds she received during

the plan term to Trustee .  Dkt. No. 60 at ¶ 1.2.

As noted above, the payment terms of Debtor's confirmed Plan were

based on her household finances as a single mother of three, and the

secured $6,000 auto loan.  The size of Debtor's household changed,

however, between the time she filed her Plan, on March 15, 2010, and when

it was confirmed on May 11.  Debtor and Osborne were married on April

17, 2010.[6]  The size of Debtor's new combined household grew with the

addition of Osborne and his four children from a previous marriage.[7]

Moreover, Debtor's household income increased substantially.

---

[6] Debtor testified she and Osborne became engaged "about a week before
we went and got married."

[7] Debtor and Osborne maintained a household of nine for a little over a
year after Plan confirmation.  Debtor's triplet daughters have since moved out to
attend college, and Debtor currently has a household of six.

MEMORANDUM OF DECISION - 4

Unfortunately, Debtor's confirmed Plan does not reflect these important changes to Debtor's finances.  The reason why:  Debtor did not bother to tell either her lawyer or Trustee about her marriage prior to confirmation.[8]

A few days after the confirmation hearing, Debtor filed a Notice of Change of Address with the Court.  Dkt. No. 68.  That notice indicated Debtor's name was Stephanie Cluff, advised the Court of a change in Debtor's address, and indicated the change in address was "effective May 13, 2010." *Id.*

On May 12, 2011, Trustee moved to dismiss Debtor's case because she had not turned delivered a copy of her 2010 state and federal income tax returns to Trustee.  Dkt. No. 75.  In response to the motion, Debtor gave her attorney copies of the joint tax returns she and Osborne had filed, which showed they were entitled to $11,128 in 2010 income tax refunds. Debtor's lawyer determined that Debtor's interest in the tax refunds was

---

[8] Debtor did not personally appear at her confirmation hearing; she was represented by counsel.

MEMORANDUM OF DECISION - 5

$3,948.56.[9]  In June 2011, Debtor sent Trustee a letter notifying Trustee that

she had married on April 17, 2010, accompanied by copies of the joint 2010

income tax returns and a $3,948.56 cashier's check for Debtor's prorated

portion of the refunds.  Trustee withdrew her motion to dismiss.[10]  Dkt.

No. 76.

  And so this case presents an odd predicament for Trustee, Debtor,

and the creditors.  The terms of the Plan confirmed by the Court were

based on Debtor's pre-marital financial situation, yet, as it turned out,

Debtor was married, and both she and Osborne were employed for the first

fifteen months of her Plan.  While Debtor's income declined during that

period due to difficulties in the mortgage industry where Debtor worked,

---

  [9]  Debtor's attorney indicates he calculated this amount by considering
community property principles and the fact that Debtor and Osborne were not
married for the entirety of 2010.

  [10]  Trustee's decision to withdraw the motion is perplexing.  In Trustee's
present motion, she argues that Debtor should have turned over the total of the
refunds she and Osborne received in 2011.  That same argument was available to
Trustee in June 2011, when Trustee elected to withdraw her prior motion to
dismiss even though Debtor turned over only $3,948.56 of her joint tax refunds.
If it was in the best interest of Debtor's creditors and the bankruptcy estate to
accept only $3,948.56 in tax refunds from Debtor June 2011, why should it be any
different now?

MEMORANDUM OF DECISION - 6

Osborne's income was steady and substantial.  In September 2011, Debtor

and Osborne decided that, given Debtor's declining earning power and

other family considerations, she would no longer work.

Four-and-a-half months after Trustee learned of Debtor's changed

marital status, by which time Debtor's employment status had also

changed, Trustee moved to modify Debtor's Plan to compel Debtor to

increase her monthly payments.  Dkt. No. 78.  After several continuances, a

hearing was held on that motion on February 7, 2012, and the Court took

the motion under advisement.  *See* Dkt. Nos. 83, 86, 93.  On March 12, 2012,

prior to entry of the Court's decision on Trustee's motion to modify

Debtor's Plan,[11] Trustee filed the present motion to have Debtor's chapter

13 case dismissed pursuant to § 1307(c).  The grounds for dismissal,

Trustee argues, are that Debtor has acted in bad faith, and that Debtor was

in material default under the Plan because she did not pay all of her

income tax refunds to Trustee.  Debtor asserts she did not act in bad faith,

---

[11] The Court denied Trustee's motion to modify on March 15, 2012.  Dkt.
Nos. 96, 97.

MEMORANDUM OF DECISION - 7

that she was only required by the Plan to turn over tax refunds in which

she had an interest, and that, even if cause exists under § 1307(c), it is not in

the best interests of her creditors or the bankruptcy estate to dismiss her

case.

## Discussion

Section 1307(c) provides that, upon request of an interested party,

the Court may dismiss a chapter 13 case "for cause;" a non-exclusive list of

examples of "cause" warranting dismissal is also set forth. *Id.* One of

those reasons, relevant here, allows dismissal if there has been a "material

default by the debtor with respect to a term of a confirmed plan."

§ 1307(c)(6). In addition to the reasons listed in § 1307(c), the Ninth Circuit

has determined a debtor's bad faith conduct during a case is cause for

dismissal. *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1993).

A debtor must demonstrate that she has acted in good faith in filing

her petition and in proposing a plan in order to obtain confirmation of the

plan. §§ 1325(a)(3), (7). In seeking plan confirmation, the burden of

proving a plan has been proposed, or a petition has been filed, in good

MEMORANDUM OF DECISION - 8

faith is on the debtor.  *Ellsworth v. Lifescape Med. Assocs., P.C. (In re
Ellsworth)*, 455 B.R. 904, 918 (9th Cir. BAP 2011).  In addition, the Ninth
Circuit Bankruptcy Appellate Panel ("BAP") has stated that, in the
§ 1307(c) dismissal context, the "[d]ebtor bears the burden of proving that
[a] petition was filed in good faith."  *Leavitt v. Soto (In re Leavitt)*, 209 B.R.
935, 940 (9th Cir. BAP 1997) ("*Leavitt II*") (citing *In re Powers*, 135 B.R. 980,
997 (Bankr. C.D. Cal. 1991)).  However, that standard, as applied to
§ 1307(c), was recently reviewed and called into question, though not
settled, by the BAP.  *In re Ellsworth*, 455 B.R. at 918–19 (questioning the
standard stated in *Leavitt II*, but ultimately finding "we need not address
now the propriety of [*Leavitt II*'s] statement regarding the burden of
proof").  Even so, the majority of courts to have considered the burden of
proving bad faith under § 1307(c) have found that, while a debtor bears the
burden of proving good faith under § 1325(a), "the burden of showing that
a case was filed in bad faith so as to require conversion or dismissal under
§ 1307(c) falls on the party seeking such conversion or dismissal."  *In re
Werts*, 410 B.R. 677, 690 & n.44 (Bankr. D. Kan. 2009) (citing *Condon v. Brady*

MEMORANDUM OF DECISION - 9

*(In re Condon)*, 358 B.R. 317, 326 (6th Cir. BAP 2007); *Sullivan v. Solimini (In re Sullivan)*, 326 B.R. 204, 211 (1st Cir. BAP 2005); *In re Haque*, 334 B.R. 486, 489 (Bankr. D. Mass 2005)); *see also In re Love*, 957 F.2d 1350, 1355 (7th Cir. 1992) ("Section 1307(c) provides that a petition may be dismissed 'for cause.'  Dismissal for cause cannot mean that a debtor must show an absence of cause; it can only mean that the party moving for dismissal must demonstrate cause."); *In re Smith*, 418 B.R. 160, 165 (Bankr. D. S.C. 2009); *In re Lancaster*, 280 B.R. 468, 474 (Bankr. W.D. Mo. 2002).

For purposes of this case, the Court presumes the burden of proving cause sufficient to dismiss a case under § 1307(c) rests with Trustee.  Thus, to persuade the Court to exercise its discretion to dismiss Debtor's case, Trustee must demonstrate that Debtor materially defaulted under her Plan when she did not turn over the entire amount of her 2010 income tax refunds to Trustee, and/or that Debtor's conduct in not alerting Trustee or the Court of her changed marital and financial circumstances amounts to bad faith.  Even if Trustee proves that cause to dismiss exists, she must also show that dismissal of Debtor's case is in the best interest of Debtor's

MEMORANDUM OF DECISION - 10

creditors and the bankruptcy estate.  § 1307(c); *see also Sievers v. Green (In re Green)*, 64 B.R. 530, 530–31 (9th Cir. BAP 1986) (highlighting that the language of § 1307(c) indicates a court *may* dismiss a case, and indicating "[t]hat one or more of the [enumerated § 1307(c)] factors may exist does not require a trial court to dismiss").

## I.   Debtor Defaulted Under Her Plan.

The terms of a confirmed chapter 13 plan are binding on a debtor and her creditors.  *See Max Recovery, Inc. v. Than (In re Than)*, 215 B.R. 430, 435 (9th Cir. BAP 1997).  Where the debtor commits a material default with respect to a term of that plan, § 1307(c)(6) provides that a court may exercise its discretion to dismiss the debtor's entire chapter 13 case.

Even where a debtor makes all monthly payments required by her chapter 13 plan, she may still be found in material default if she does not comply with the plan's other terms.  *See Roberts v. Boyajian (In re Roberts)*, 279 B.R. 396, 399–400 (1st Cir. BAP 2000) (dismissing debtors' chapter 13 case even though they paid the monthly dollar amount stated in their plan, because they did not comply with other plan provisions, such as the

MEMORANDUM OF DECISION - 11

payment of post-petition tax claims in full).  Where a debtor's plan requires her to turn over tax refunds to the trustee, and the debtor does not turn those funds over, that may constitute a material default sufficient to warrant dismissal.  *See In re Hansen*, 1995 WL 625640 at *1 (Bankr. D. Idaho 1995).

Debtor argues her Plan does not require her to turn over *all* refunds received by her and Osborne, only those in which she has an interest. Having paid over to Trustee the amount she believes to represent her interest in the joint tax refunds, Debtor asserts she complied with her Plan. Trustee, on the other hand, while not contending the amount sent to her by Debtor was less than Debtor's interest in the refunds, argues that sending any amount less than the $11,128 in total refunds was a material default.

The relevant Plan provision provides:

> During the applicable commitment period of the plan . . . the debtor will turn over to the trustee all net income tax refunds.  At any time during the term of the plan, debtor shall be entitled to use a tax refund to pay taxes due any other taxing authority; however, the debtor shall remit any net income tax refund balance to the trustee.  Upon

MEMORANDUM OF DECISION - 12

the trustee's stipulation with the debtor and an
order of the court, the debtor may retain, in whole
or in part, certain net income tax refunds during
the term of the plan to facilitate the terms of this
plan or to meet other reasonable and necessary
needs of the debtor.

Dkt. No. 60 at ¶ 1.2.[12]  As can be seen, the Plan requires Debtor to turn over

"net" tax refunds.  Debtor offers an interpretation of "net" that includes

only those tax refunds remaining after she deducted out Osborne's share.

*See, e.g.,* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 832 (11th ed. 2003)

(defining "net" as that which is "remaining after the deduction of all

charges, outlay, or loss").  Debtor's Plan, however, fairly defines "net" in

this instance; the term includes all amounts remaining after Debtor's

payment of taxes due to any other taxing authority.  *See* Dkt. No. 60 at

¶ 1.2.  Debtor's election to retain some of those net refunds, instead of

turning them over to Trustee (or securing Trustee's prior approval to retain

---

[12]  This plan provision is one recommended for use in the District form
chapter 13 plan.  *See* LBR 2002.5(e); Chapter 13 Standard Plan, available at
www.id.uscourts.gov/forms-bk.htm (last visited Apr. 26, 2012).

MEMORANDUM OF DECISION - 13

a portion of them), was a default under Debtor's Plan.[13]  That Osborne may

claim a portion of the refunds, or that Debtor and Osborne may "need" the

refunds to pay necessary expenses, did not excuse Debtor from delivering

the refunds to Trustee in the first instance.

## II.    Debtor Did Not Act in Bad Faith.

A chapter 13 debtor's case may be dismissed if the debtor acts in bad

faith.  *Leavitt v. Soto (In re Leavitt) ("Leavitt I")*, 171 F.3d 1219, 1224–25 (9th

Cir. 1999); *Hopkins v. United States (In re Hopkins)*, 201 B.R. 993, 995 (Bankr.

D. Nev. 1996).  A bankruptcy court is to consider the totality of the

---

[13]  To be clear, Debtor's default was in not turning over the total net
refunds to Trustee.  The Court states no opinion as to whether Trustee is entitled
to *retain and distribute* the entire refund amount under Debtor's Plan, as the
parties have not squarely placed the issue before the Court.  Indeed, perhaps via
request to Trustee, or upon motion to the Court, a portion of the tax refunds may
have been returned to Debtor and Osborne.  While Trustee argued at the hearing
that Osborne's portion of the tax refunds are disposable income, and are,
therefore, available to Trustee, her position is not universally accepted.  *See, e.g.,
In re Malewicz*, 457 B.R. 1, 5-9 (Bankr. E.D.N.Y. 2010) (finding that a non-debtor
spouse's interest in post-petition tax refunds were not required to be contributed
to debtor's creditors:  "while a non-debtor spouse's income is considered in
determining projected disposable income this cannot in and of itself be the basis
to require the non-debtor spouse to contribute such income for distribution to
creditors under the Plan").  At the same time, the Plan requires the turn over of
those refunds  to Trustee, and Debtor's choice not to do so was a default of that
Plan provision.

MEMORANDUM OF DECISION - 14

circumstances in determining bad faith.  *In re Eisen*, 14 F.3d at 470.  While

courts have developed particularized lists of "factors" to evaluate a

debtor's good faith in chapter 13, most are tailored to §§ 1325(a)(3) and

(a)(7) review of whether a petition was filed, or a plan was proposed, in

good faith, and are of limited utility where much of Debtor's alleged bad

faith occurred post-confirmation.  *See, e.g.*, *Leavitt I*, 171 F.3d at 1224.[14]  In

addition, because dismissal of a debtor's case is a much harsher remedy

than denial of confirmation, a "bankruptcy court should be more reluctant

to dismiss a petition under Section 1307(c) for lack of good faith than to

---

[14]  For example, the typical factors considered in determining bad faith
include:

> (1)  whether the debtor "misrepresented facts in his
> [petition or] plan, unfairly manipulated the
> Bankruptcy Code, or otherwise [filed] his Chapter 13
> [petition or] plan in an inequitable manner;"
> (2)  "the debtor's history of filings and dismissals;"
> (3)  whether "the debtor only intended to defeat state
> court litigation;"
> (4)  whether egregious behavior is present.

*In re Leavitt*, 171 F.3d at 1224 (citations omitted, alterations in original).
Obviously, these factors primarily examine a debtor's conduct in connection with
filing a petition or proposing a plan.  *See id.*  While some of Debtor's relevant
conduct here occurred pre-confirmation, much of that targeted by Trustee  did
not occur until after Debtor's plan had been confirmed.

MEMORANDUM OF DECISION - 15

reject a plan for lack of good faith under Section 1325(a)." *In re Love*, 957 F.2d at 1356. At the same time, a few of the general principles established in the § 1325(a) good faith cases are relevant to determining whether bad faith exists here, such as whether Debtor misrepresented facts, unfairly manipulated the Code, or exhibited egregious behavior.

More specifically, chapter 13 debtors have a duty, if requested, to provide post-confirmation tax returns and an annual statement of income to the Court. §§ 521(f)(4), (g). Included in the annual statement is to be a description of any income provided to the debtor's household by a non-debtor, including identification of the non-debtor. § 521(g)(1)(C). The purpose of this self-reporting requirement "is to provide information needed by a trustee or holder of an allowed unsecured claim in order to decide whether to propose hostile § 1329 plan modifications." *Fridley v. Forsythe (In re Fridley)*, 380 B.R. 538, 544 (9th Cir. BAP 2007). Of course, here, Debtor's change in circumstances occurred prior to confirmation, but continued undisclosed post-confirmation.

Debtor did not misrepresent facts, unfairly manipulate the Code, or

MEMORANDUM OF DECISION - 16

exhibit egregious behavior in not disclosing her marriage pre-confirmation.

While Debtor's conduct can legitimately be criticized, her pre-confirmation

non-disclosure was, most likely, the result of Debtor's whirlwind

engagement and marriage, followed by her Plan confirmation in relatively

rapid succession. When Debtor submitted her proposed Plan, she was not

engaged, and, as far as the Court has been shown, Debtor had no intention

at that time of changing her marital or financial circumstances. Within the

next month, however, Debtor became engaged and married, and,

approximately three weeks later, the Court confirmed Debtor's Plan at a

hearing at which she was represented by uninformed counsel, but was not

personally present. While, to be sure, Debtor should have informed her

attorney of the changes in her life, unfortunately, she did not. However, in

considering the totality of the circumstances, this non-disclosure prior to

confirmation was not the result of Debtor's misrepresentation,

manipulation, or egregious behavior.

Post-confirmation, Debtor submitted a change of address notice to

the Court, and then notified Trustee of her marriage when she provided

MEMORANDUM OF DECISION - 17

Trustee her 2010 post-confirmation tax returns.  Debtor's attorney filed the

notice of Debtor's changed address two days after her Plan confirmation

hearing, presumably to ensure Debtor would continue to receive

information about her case.  While it is baffling that Debtor's attorney

apparently did not inquire as to *why* Debtor had changed addresses, he

apparently did not do so.

A year after confirmation, when Debtor had not submitted her 2010

income tax returns, Trustee moved to dismiss Debtor's case.  Dkt. No. 75.

In response to Trustee's motion to dismiss, Debtor notified Trustee about

her marriage, gave her the 2010 tax returns, and paid over the amount her

attorney determined to be her interest in the joint tax refunds.  In this

respect, Debtor thus complied with her § 521 obligation to turn over her

post-confirmation income tax returns.  While inadequate as a practical

matter, the reporting requirement functioned as anticipated by the Code,

and, through Debtor's tax returns, Trustee learned of Debtor's changed

circumstances and later filed a motion to modify her Plan.  Dkt. No. 78.

While the evidence can arguably be viewed otherwise, the Court finds that

MEMORANDUM OF DECISION - 18

Debtor did not act in bad faith in waiting to inform Trustee of her change

in circumstances until she was required to turn over her income tax

returns.[15]

### III.    Even Though Debtor Has Defaulted on Her Plan, the Court Declines to Dismiss Debtor's Case.

The Code gives a bankruptcy court discretion to dismiss a case

pursuant to § 1307(c) or not.  *In re Green*, 64 B.R. at 530–31.  In determining

whether to dismiss, the Court must consider the best interests of creditors

and the estate.  § 1307(c); *see also, e.g.*, *In re Hill*, 374 B.R. 745, 750 (Bankr.

S.D. Cal. 2007).

Under her Plan, Debtor surrendered all collateral securing

---

[15]  Trustee received Debtor's income tax and marriage information in early June 2011 while, at the time, she had a pending motion to dismiss Debtor's case. Trustee withdrew that motion to dismiss, however, and did not move to modify Debtor's Plan until mid-October 2011.  In the meantime, for personal reasons, Debtor stopped working in September 2011.  Had Trustee made her request to modify Debtor's Plan in June, July, or August 2011, when both Debtor and Osborne were earning income, Trustee's argument for a plan modification may have been much stronger.  *See* Memorandum of Decision (March 15, 2012), Dkt. No. 96.

MEMORANDUM OF DECISION - 19

prepetition debt; presumably, Debtor no longer has secured creditors.[16] *See* Dkt. No. 60. At the same time, Debtor listed thirty unsecured creditors, owed a total of $56,460.16, in her schedules. Dkt. Nos. 1, 39. Debtor agreed to pay $11,588 to Trustee over the life of her Plan, and, at last report, Debtor's plan payments are current. In addition, Debtor is required to pay her annual net income tax refunds to Trustee. Based on Debtor's 2010 income tax refunds, the amount to be distributed to creditors under Debtor's plan is significant.

On the other hand, if the Court dismisses Debtor's case, her creditors will be limited to pursuing her separate assets, or her newly-acquired community property. Moroever, Debtor could also choose to file another bankruptcy petition. While her annualized current monthly income appears to exceed the median family income for a household of six, Debtor may qualify for chapter 7 relief after accounting for those amounts of Osborne's income not paid towards Debtor's household's expenses on a

---

[16] While the Court authorized Debtor to incur additional secured debt post-petition to buy a car, that secured creditor later became Debtor's husband, and, in any event, the debt was to be paid off by March 2012.

MEMORANDUM OF DECISION - 20

regular basis.[17]  But even if Debtor filed another chapter 13 case, in

reviewing Trustee's recent motion to modify, the Court found Debtor's

income, including her interest in Osborne's income, would not be sufficient

to support plan payments in an amount greater than she is now paying.

*See* Memorandum of Decision at 14 (March 15, 2012), Dkt. No. 96.  While it

is perhaps a close call, considering all relevant circumstances, and the

interests of Debtor's creditors, the Court, in its discretion, chooses not to

dismiss Debtor's case.

But, while Debtor's case will continue, Debtor has defaulted under

her Plan by not paying over the 2010 joint net income tax refunds to

Trustee.  As a result, Debtor will not have completed her plan, and will not

be eligible for a discharge, until she cures that default.  *See* § 1328(a); *In re*

*Nash*, 765 F.2d 1410, 1413 (9th Cir. 1985) ("A discharge occurs only if the

debtor completes all payments under the plan or if the debtor receives a

hardship discharge.").  It would be sadly ironic if, in resisting her

---

[17]  Debtor's most recent Schedules I and J indicate Osborne has monthly
payroll deductions of $4,429.37, which includes deductions for taxes and social
security, insurance, and retirement.  Dkt. No. 79.

MEMORANDUM OF DECISION - 21

obligation to turn over the refunds and opposing efforts to dismiss her

case, Debtor only sees her case closed without receipt of a discharge.

### Conclusion

All things considered, the Court finds that Debtor did not act in bad

faith in this case.  While Debtor defaulted under her Plan by not turning

over all of her 2010 net income tax refunds to Trustee, the Court declines to

dismiss Debtor's case.  However, Debtor will not be eligible to receive a

discharge until she has cured this default.

In a  separate order, the Court will deny Trustee's motion to dismiss.

Dated:  April 30, 2012

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 22